UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUO VAT ESTELL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JOHN MCHUGH,<br><br>　　　　　Defendant. | Case No. 15-cv-04898-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 40 |

# INTRODUCTION

Plaintiff Quo Vat Estell ("Plaintiff") brings this action against Defendant John McHugh ("Defendant") as Secretary of the United States Army (the "Army"), alleging the Army discriminated against her based on her disability and failed to accommodate her disability. Pending before the Court is Defendant's Motion to Dismiss the Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Mot., Dkt. No. 40. Plaintiff filed an Opposition (Dkt. No. 45) and Defendant filed a Reply (Dkt. No. 46). The Court previously found this matter suitable for disposition without oral argument. Dkt. No. 47. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendant's Motion for the following reasons.

# PROCEDURAL BACKGROUND

Plaintiff filed her original complaint in this Court on October 24, 2015. Compl., Dkt. No. 1. Her First Amended Complaint ("FAC"), filed February 4, 2016, asserted a claim under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq., and two claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, et seq. (a failure to accommodate claim and a disability discrimination claim). *See* FAC, Dkt. No. 9. The Court dismissed the FAC. *See*

Order Dismissing FAC, Dkt. No. 27. The Court dismissed Plaintiff's FMLA claim with prejudice after Plaintiff acknowledged the claim was not viable. *Id*. at 5. The Court also dismissed Plaintiff's Rehabilitation Act claims to the extent they were based on conduct occurring prior to December 27, 2013, because the FAC did not allege Plaintiff had exhausted her administrative remedies for claims based on conduct predating that date; the Court granted leave to amend to allege facts showing that equitable tolling (or another doctrine) applied that would allow her to rely on conduct occurring prior to that date. *Id*. at 7. In addition, the Court found Plaintiff failed to state a claim because she did not adequately plead that her disability was a factor in Defendant's actions, and because she did not adequately plead the Army's failure to accommodate her disabilities. Those claims also were dismissed with leave to amend. *Id*. at 9.

Plaintiff's Second Amended Complaint ("SAC") asserted two claims under the Rehabilitation Act. *See* SAC. Defendant again moved to dismiss Plaintiff's claims. Dkt. No. 28. The Court granted the motion in part. *See* Order Dismissing SAC, Dkt. No. 36. The Court again dismissed Plaintiff's Rehabilitation Act claims to the extent they were based on conduct predating December 27, 2013, as the Court found Plaintiff failed to allege facts sufficient to show equitable tolling applied. *Id*. at 8. The Court granted "Plaintiff one more chance to amend her claims to show equitable tolling applies based on the standards enunciated in *Stoll*." *Id*. The Court also found Plaintiff had failed to plead facts sufficient to show a failure to accommodate, and dismissed that claim without prejudice; the Court specified that in amending that claim, "Plaintiff must identify when the requests were made, to whom, and why they were necessary." *Id*. at 12 (quotation marks and citation omitted). The Court also advised Plaintiff that "this will be her last opportunity to cure any deficiencies in her Complaint." *Id*. at 13.

On December 29, 2016, Plaintiff filed the TAC, again asserting two claims under the Rehabilitation Act. *See* TAC, Dkt. No. 39.[1] Defendant once more moves to dismiss the pleading

---

[1] Although Plaintiff conceded she could not proceed with her claim under the Family and Medical Leave Act ("FMLA") (Opp'n to Mot. to Dismiss FAC, Dkt. No. 24 at 1), although the Court dismissed her FMLA claim (Order Dismissing FAC at 5), and although the Court noted in its Order Dismissing the SAC that it had previously dismissed her FMLA claim (*id*. at 2 n.1), Plaintiff nonetheless includes allegations in the TAC related to the FMLA (TAC ¶¶ 11-13, 28). The Court once more reiterates that Plaintiff's FMLA claim was dismissed, with prejudice, and

2

for failure to state a claim.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend

---

STRIKES Paragraphs 11-13 in the TAC.

for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### A. Allegations of the TAC

Plaintiff is employed by the Army as a Human Resources Assistant. TAC ¶ 10. She alleges she is disabled due to Systemic Lupus Erythematosus ("SLE"). *Id*. ¶ 18. As a result of her disability, Plaintiff experiences sensitivity to light. *Id*. ¶ 19. From the time she began working for the Army, her employer accommodated her sensitivity by modifying her position so she did not have to work at the front desk or in the file room, places where Plaintiff would have been working directly under fluorescent lights. *Id*. Plaintiff alleges she could perform the essential functions of her job with reasonable accommodation. *Id*. ¶ 23. This arrangement changed when Captain Spohr became Plaintiff's supervisor.[2] *Id*. ¶ 20. Spohr "repeatedly insisted" Plaintiff work in the file room or at the front desk; she also refused to allow Plaintiff to work at an empty cubicle, where Plaintiff had previously worked. *Id*. ¶¶ 20-21. Plaintiff explained to Spohr how working in those areas impacted her disability; Plaintiff's doctors also sent Spohr communications between November 2013 and February 2014 about "what 'avoiding working directly under fluorescent light' meant." *Id*. ¶ 20. Spohr first ignored Plaintiff's doctors, and insisted Plaintiff could still work directly under fluorescent light; Spohr then claimed based on the doctors' notes that Plaintiff could not even enter the building. *Id*.

On November 8, 2013, Plaintiff's doctor gave her a note taking her off work from that day through January 14, 2014. *Id*. ¶ 24. Plaintiff alleges Captain Spohr "immediately denied" this request for accommodation, did not engage in the interactive process mandated by the

---

[2] Plaintiff still does not allege when Spohr became her supervisor.

4

1    Rehabilitation Act[3], and demanded Plaintiff provide information from doctors other than the one
2    who had authored the November 8, 2013 note. *Id*. ¶ 25. Plaintiff further alleges that on January 8,
3    2014, while she "was away from work as directed by her doctors," Spohr refused her entry to the
4    building, "claiming plaintiff's own doctor's notes required this, which was not true." *Id*. ¶ 26.
5    When her doctor's note expired and Plaintiff was able to return to work without restrictions on
6    January 15, 2014, Spohr refused to allow her to do so. *Id*. ¶ 27. Plaintiff eventually returned to
7    work on March 12, 2014. *Id*.

8    Plaintiff alleges "the Army" failed to accommodate her by allowing her to return to work
9    when she was medically cleared to do so in January 15, 2014; not allowing Plaintiff time to attend
10   doctors' appointments; and refusing to make allowances for Plaintiff at times for being late or
11   missing work, "even when caused by her disability." *Id*. ¶ 28. Plaintiff alleges her performance
12   review covering the period between February 1, 2013 and January 31, 2014 rated her as "needing
13   improvement" for not following call-in procedures, late arrivals, and unscheduled days off; she
14   contends that in each instance where she failed to call in, arrived late, or took an unscheduled day
15   off, it was "due to [her] disability/medical condition, and/or in a few instances FMLA covered
16   time for the care of [her] mother." *Id*. She contends the low rating she received as a result of this
17   performance evaluation "would block one from eligibility for promotions." *Id*.

18   Plaintiff further alleges that between 2013 and 2014, the Army took the following adverse
19   employment actions: (1) "she was repeatedly warn[ed]" and was disciplined for being tardy or
20   missing work due to her disability, even when she had doctor's notes covering her absences and
21   she informed Spohr that the absences or tardiness were due to her disability, "including being
22   marked AWOL for missing work on October 24[, 2013]"; (2) Spohr refused to complete disability
23   paperwork Plaintiff provided; (3) Spohr refused Plaintiff entry to the building where she worked
24   in January 2014 although her doctor's note medically cleared her to return to work after January

---

[3] This interactive process requires employers, once they become aware that an employee needs accommodation, to engage with the employee to identify and implement appropriate reasonable accommodations. *See Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab.*, 74 F. Supp. 3d 1163, 1176 (N.D. Cal. 2014).

14, 2014; (4) Spohr gave Plaintiff a negative performance review for the 2013-2014 time frame, based in part on the time off she took due to her disability; and (5) "Supervisory level employees in plaintiff's workplace told negative things about plaintiff to her co-workers, including warning them to avoid her and stating she was 'trouble'" for undescribed reasons. *Id.* ¶ 34. She alleges the Army took these actions because of her disability. *Id*. ¶ 35.[4]

Plaintiff alleges equitable tolling is warranted because

> [i]n the period prior to plaintiff's initial contact with an EEO counselor at her workplace, plaintiff was suffering severe health issues because of her own disability/medical conditions, which required multiple hospitalizations, including hospitalizations on November 3, 6, 17, and December 3, 2013, and January 12, of 2014. Some of these were multi-day hospitalizations. Plaintiff's doctor took her off work altogether from November 8, 2013-January 14, 2014, and she was not supposed to do any work of any kind in this time-frame. Plaintiff was put on short-term disability during the November 8, 2013-January 14, 2014 time-frame.

*Id.* ¶ 3. She further alleges that Spohr demanded she respond to "constant phone calls, emails and paperwork" that were "all allegedly related to plaintiff's doctors' requests that she take time off for work" "during the periods [Plaintiff's] doctor advised [her] she could not work at all because of her disability[.]" *Id*. Being forced to respond to Spohr limited and adversely impacted her "ability to get necessary treatment for her disability and medical condition." *Id*. She responded to Spohr "despite how difficult it was for her to do so." *Id*. She contends these "issues delayed [her] ability to contact an EEO counselor about her claims." *Id*. She further contends "it was not completely clear" when Spohr "immediately denied the November 8, 2013 request for accommodation" that this was a final decision because Spohr continued to demand additional information "and it was still possible that agreement could have been reached as to plaintiff's request for accommodation." *Id*. ¶ 4.

**B.     Administrative Exhaustion and EEO Proceedings**

On February 10, 2014, Plaintiff contacted an Army Equal Employment Opportunity ("EEO") counselor relating to the Army's failure to accommodate her disability. Reding Decl.

---

[4] The TAC misnumbers paragraphs after ¶ 34; this allegation is found in the ¶ 33 that immediately follows the first ¶ 34.

¶ 2, Dkt. No. 18-1 & Ex. A (EEO Counselor's Report) at 1.[5] The Department of Defense ("DOD") sent Plaintiff a Notice of Right to File a Formal EEO Complaint of Discrimination on March 26, 2014. *Id*. ¶ 3 & Ex. B (Notice). Plaintiff signed her Formal EEO Complaint on April 13, 2014. *Id*. ¶ 4 & Ex. C (Formal EEO Complaint). In the EEO Complaint, Plaintiff alleges she "was discriminated against because of [her] history of . . . physical disability with fluorescent lights, sun sensitivity and prior EEO involvement." *Id*., Ex. C at 3. Throughout the EEO Complaint, Plaintiff identifies Spohr as one of several individuals discriminating against her. *See id*., Ex. C at 3-6. She alleges Spohr engaged in various discriminatory and retaliatory actions between November 13, 2013 and January 31, 2014. *Id*., Ex. C at 2-5. On April 28, 2014, the DOD informed Plaintiff it had accepted her discrimination claims for investigation. *Id*. ¶ 5 & Ex. D (DOD Letter). The DOD letter informed Plaintiff that the investigation must be completed within 180 days and that she "may file a civil action" "if the Army has not issued a final decision on this complaint, after 180 days from the date the formal complaint was filed." *Id*., Ex. D.

**C.   Equitable Tolling**

   1.   <u>The Court's Prior Orders</u>

In granting Defendant's motion to dismiss the FAC, the Court relied upon the applicable Ninth Circuit standard: "Equitable tolling of the statute of limitations applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Order Dismissing FAC at 6 (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999)). The Court found Plaintiff's allegation that her doctors requested

---

[5] When ruling upon a Rule 12(b)(6) motion, a court may consider documents alleged in a complaint that are essential to a plaintiff's claims and whose authenticity no party questions. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. City of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). Moreover, "[c]ourts can consider an employee's administrative record even if the documents were not referenced in the complaint." *Lacayo v. Donahoe*, 2015 WL 993448, *10 (N.D. Cal. Mar. 4, 2015) (citing cases). Plaintiff does not challenge the authenticity of the documents attached to the Reding Declaration. Exhausting her administrative remedies is essential to her claim, and all of the documents attached to the Reding Declaration are part of Plaintiff's administrative record. The Court accordingly may consider the documents attached to the Reding Declaration, which Defendant relies upon in its Motion (Mot. at 3), without converting Defendant's Motion into a motion for summary judgment.

she take two months off from work were insufficient to trigger equitable tolling under *Stoll* because they did not show how the issues that prevented her from working also prevented her from contacting an EEO counselor. Order Dismissing FAC at 7. The Court found that "[o]nly wrongful acts occurring within 45 days of Plaintiff's initial contact with the EEO Counselor—i.e., before December 27, 2013—are timely under EEO regulations . . . . To the extent Plaintiff's claims are based on incidents occurring before December 27, 2013, they are not properly exhausted. As such, they are time-barred and cannot be the basis for a claim under the Rehabilitation Act." *Id.* The Court granted Plaintiff leave to amend to "allege facts showing that equitable tolling (or another doctrine) applies that allow her to rely on conduct occurring prior to that date." *Id*. at 8.

In the SAC, Plaintiff alleged that "[i]n the period prior to [her] initial contact with an EEO counselor[,]" she (1) suffered severe health issues because of her disability, which required multiple hospitalizations; (2) could not contact an EEO counselor on account of the demands of her work, which she was performing even though her doctor advised her not to work; and (3) was responsible for her mother's care, which required she accompany her mother to medical, hospice, and court appointments on more than nine occasions between November 20, 2013 and February 25, 2014. *See* SAC ¶¶ 3-4. The Court found the additional facts still did not demonstrate equitable tolling was warranted:

> First, Plaintiff fails to allege facts sufficient to show that Spohr's work-related demands rise to the level of wrongful conduct courts have found sufficient to trigger equitable tolling, or that Spohr's conduct prevented her from contacting an EEO counselor. *See Stoll*, 165 F.3d at 1242 (the "effects of the repeated sexual abuse, rape, and assault she experienced [at the hands of post office employees] left her severely impaired and unable to function in many respects. She has attempted suicide numerous times-and may do so again. She is unable to read, open mail, or function in society. Thus, her failure to assert her claim within the statutory period was a direct consequence of the Post Office's wrongful conduct").
>
> Second, she fails to allege facts sufficient to show that it was impossible for her to meet or otherwise contact an EEO counselor. The facts she pleads in fact suggest the opposite. Despite being excused from work for medical reasons between November 8, 2013 and January 4, 2014, Plaintiff was able to work, including "respond[ing] to constant phone calls, emails, and paperwork." SAC ¶ 3. During this same time frame, Plaintiff also was able to

> care for and attend multiple appointments with her mother. The new allegations undercut Plaintiff's argument that equitable tolling should apply because they suggest it was not impossible for her to accomplish a task such as contacting her EEO counselor. *See Long v. Paulson*, 349 F. App'x 145, 146 (9th Cir. 2009) (no equitable tolling where plaintiff was hospitalized for first eight days of 90-day period and did not show he was incapacitated); *Lacayo v. Donahoe*, 2015 WL 993448, at *11-12 (N.D. Cal. Mar. 4, 2015) (no equitable tolling where allegations in complaint indicate that plaintiff successfully applied for disability benefits and made written requests for copies of employment file during period she requested be tolled).
>
> Similarly, Plaintiff does not explain how being placed off work by her doctor (SAC ¶ 24), and prohibited from entering her work building between November 8, 2013 and January 4, 2014 (*id.* ¶ 26), prevented her from timely contacting her EEO counselor about her claims. Plaintiff does not allege that she was hospitalized during this period or advised not to pursue EEO remedies by her doctor, or that she could not contact her EEO counselor because the counselor worked in the building Plaintiff was prohibited from entering.

Order Dismissing SAC at 6-7.

In granting leave to amend, the Court stated "Plaintiff must allege either wrongful conduct on the part of the Army preventing her from contacting her EEO counselor, or allege that extraordinary circumstances beyond her control made it impossible for her to contact her EEO counselor within 45 days of the allegedly discriminatory acts." *Id.* at 6 (citing *Stoll*, 165 F.3d at 1242). The Court also observed Plaintiff did not address Defendant's arguments and case law, but relied instead on an EEOC decision, which the Court found did not advance Plaintiff's argument. *See id.* at 7-8 (citing *Complainant v. U.S. Postal Serv.*, EEOC Req. No. 05980475, 1998 WL 518389 (Aug. 6, 1998) (affirming agency's dismissal of a complaint for failure to meet the 45-day deadline, holding the appellant had not demonstrated she was so ill due to bronchitis and a viral infection that she was "so incapacitated that she could not timely file her appeal." (citing *Weinberger v. Dep't of the Army*, EEOC Req. No. 05920040, 1992 WL 1374483 (Feb. 21, 1992) ("[W]hen an appellant claims that a physical condition prevented him/her from meeting a particular deadline, the appellant must be so incapacitated by the condition as to render him/her unable to make a timely filing.")))).

        2.    <u>The TAC Does Not Demonstrate Equitable Tolling Is Warranted</u>

Plaintiff now alleges she was hospitalized "on November 3, 6, 17[, 2013], and December

9

3, 2013, and January 12, of 2014. Some were multi-day hospitalizations." TAC ¶ 3. Plaintiff does not allege which hospitalizations were multi-day, how many days she was hospitalized in total, or whether she was hospitalized at any point after January 12, 2014. She also does not allege incapacitation during her hospitalizations. Plaintiff alleges "she was not supposed to do any work of any kind" and was placed on short term disability during the November 8, 2013 - January 14, 2014 period, and that her doctor fully released her to return to work on January 15, 2014. *Id.* ¶¶ 3, 27. Despite the Court's previous order explaining why these allegations were insufficient, the TAC does not cure these deficiencies: Plaintiff (1) argues Spohr's demands "affected" her ability to timely file a claim (Opp'n at 2), but does not allege any facts showing how Spohr's conduct actually prevented her from contacting an EEO counselor earlier than she did; (2) continues to allege she was prevented from entering her building starting January 8, 2014, but still does not allege how this prevented her from contacting an EEO counselor; and (3) fails to allege how being placed on short term disability prevented her from contacting an EEO counselor.

While the allegations in the TAC are more detailed than the SAC's, they still do not meet the standard articulated in *Stoll*. Plaintiff never alleges she was in fact incapacitated; on the contrary, the TAC's allegations suggest Plaintiff was not incapable of contacting an EEO counselor. While on medical leave, Plaintiff continued to respond to Stoll's requests for information, albeit with difficulty, and she may also have taken time to care of her mother. TAC ¶¶ 3, 28.[6] Plaintiff alleges she was cleared to return to work as of January 15, 2014, but there are no facts explaining why she waited for more than three weeks before contacting an EEO counselor. Plaintiff simply continues to fail to allege facts sufficient to show, as she must under *Stoll*, either that (1) Spohr's conduct was so wrongful it triggered equitable tolling or prevented her from contacting an EEO counselor; or (2) it was impossible for Plaintiff to meet or otherwise contact an EEO counselor. Plaintiff has again failed to show she was so incapacitated that she was

---

[6] In the SAC, Plaintiff alleged she accompanied her mother to more than nine doctors' appointments, emergency visits, and court appointments between November 20, 2013 and February 25, 2014; provided "necessary care" to her mother during this period; and was "not able to contact an EEO counselor earlier because of this care of her monther." SAC ¶ 4. Plaintiff omitted this allegation from the TAC.

unable to timely contact an EEO counselor. Plaintiff cites no authority demonstrating that equitable tolling should apply under the factual circumstances she relies upon.

Plaintiff does not address the authorities this Court analyzed in its Order Dismissing the SAC, nor the majority of the authorities Defendant analyzes in its Motion. She instead relies on a single unpublished opinion to argue her hospitalizations warrant equitable tolling. *See* Opp'n at 2 (citing *Long*, 349 F. App'x at 146). In *Long*, the Ninth Circuit rejected the argument that hospitalization rendered a plaintiff incapacitated for purposes of equitable tolling, characterizing the position as "nothing more than a garden variety claim of excusable neglect." *Id*. at 146. Plaintiff contends her situation is distinguishable from *Long* for two reasons. First, the plaintiff in *Long* was hospitalized for 8 out of the relevant 90 day period he had to file suit; Plaintiff, meanwhile, had to "actually reach[] out and communicat[e] the details of the complaint to a specific person at a different location." Opp'n at 2. Plaintiff identifies no legal support for her apparent argument that the 45-day EEO statute of limitation requires a different standard, and the Court cannot see how this distinction is relevant to the equitable tolling analysis. Second, Plaintiff argues that unlike *Long*, she "provided details of the seriousness of the conditions for which she was hospitalized." *Id*. Plaintiff, in fact, provides no such details. *See* TAC.[7] Plaintiff's allegations do not establish how, because of her conditions, she "could certainly not have made contact with the EEO person to initiate a complaint during these time frames." *Id*. at 3. It also is unclear from Plaintiff's allegations how much time she spent in the hospital beyond three days in November 2013 (two of which took place before the November 8, 2013 denial that forms the basis of this action), one day in December 2013, and one day in January 2014.

       3.    <u>No Delayed Accrual or Continuing Violation</u>

The discriminatory action that forms the basis of the TAC is Spohr's November 8, 2013 denial of Plaintiff's request for medical leave. Plaintiff nonetheless argues she did not have a complete cause of action as of that date because she "continued communicating with her

---

[7] The Court also notes Plaintiff's argument that hospitalizations establish the seriousness of her condition is undermined by the fact her doctor released her to work with no restrictions only two days after her last hospitalization.

11

employer" and it was "not entirely clear" that the decision was "absolutely" final. Opp'n at 3 (citing *Green v. Brennan*, 578 U.S. 1769 (May 23, 2016)). Plaintiff does not attempt to analyze *Green* or apply its holding to the facts of her case. *Id*.[8] Instead, she merely cites *Green* for the proposition that she did not have a "complete cause of action" on that date because she continued to communicate with Spohr about her disability and accommodation request, and because her employer continued to commit wrongful conduct. *Id*. In *Green*, the Supreme Court held that "the matter alleged to be discriminatory in a constructive-discharge claim necessarily includes the employee's resignation." *Green*, 578 U.S. at 1776 (internal quotation marks omitted). The Supreme Court reasoned that a constructive-discharge claim has two elements a plaintiff must establish to prevail: (1) "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" and (2) "he actually resigned." *Id*. (quotation marks and citations omitted). A plaintiff thus did not have a "complete and present cause of action" for constructive discharge until he resigned, and "[u]nder the standard rule for limitations periods, the limitations period should begin to run for a constructive-discharge claim only after a plaintiff resigns." *Id*. at 1777.

Plaintiff cites no case law to support her contention that continued communication vitiates an element of her failure to accommodate claim, and does not analyze when a failure to accommodate claim accrues. Plaintiff's position is not well taken. *Branch v. McDonald*, 2015 WL 7874763, at *6 (N.D. Cal. Dec. 4, 2015) is instructive. In *Branch*, the plaintiff's employer instructed her it would not accommodate her medical restrictions on October 3, 2013, which forced the plaintiff to retire. *Id*. The plaintiff did not contact an EEO counselor within 45 days of the denial of her request for accommodation, but she argued equitable tolling applied because the October 3, 2013 decision was "provisional, because she could have changed her retirement election up until October 31, 2013, and much could have happened during those intervening weeks." *Id*. The court rejected the argument because "[t]here is no record evidence that this decision was anything but final on October 3, 2013, and Plaintiff presents no evidence that [her

---

[8] The Court previously criticized Plaintiff's cursory treatment of *Green*. *See* Order Dismissing FAC at 8 n.6.

employer] suggested that the denial of accommodation was merely provisional." *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 262 (1980) (letter from Board of Trustee indicating a willingness to change prior decision rejecting professor's bid for tenure did not suggest earlier decision denying tenure was tentative; limitations period accrued when Board notified professor he would be offered a terminal contract, not at later point during grievance process; the "grievance procedure, but its nature, is a *remedy* for a prior decision, not an opportunity to *influence* the decision before it is made") (emphasis in original)). Similarly, Plaintiff alleges no facts in the TAC showing Spohr's November 8, 2013 denial was merely provisional. On the contrary, she alleges Spohr "immediately denied" her request. TAC ¶ 4.

To the extent Plaintiff invokes the continuing violation doctrine to avoid the statute of limitations bar, that effort also fails. "The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights up to a point in time that falls within the applicable limitations period." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001). A plaintiff can establish a continuing violation by showing "a systematic policy or practice of discrimination that operated, in part, within the limitations period-a systemic violation." *Id*. (internal quotation omitted). Plaintiff has not alleged a systemic policy or practice[9], but rather alleges Spohr engaged in a series of related acts against her, at least some of which fell within the relevant statute of limitations. *See* TAC. The Supreme Court has rejected this "serial violation" theory: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Brown v. Napa Valley Unified Sch. Dist.*, 2012 WL 4364673, at *7 (N.D. Cal. Sept. 24, 2012) (explaining Supreme Court "expressly rejected the continuing violations theory arising out of 'serial violations'" and that plaintiffs seeking to prevail on issue

---

[9] A pattern-or-practice claim "cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (2003). In the TAC, Plaintiff alleges Spohr "immediately denied" her request. TAC ¶ 4. Spohr's decision to deny the accommodation request is an "individualized decision" that is "best characterized as [a] discrete act[], rather than as a pattern or practice of discrimination." *Cherosky*, 330 F.3d at 1247.

"must have alleged facts which show there was 'a systemic policy or practice of discrimination'" (quoting *Douglas*, 271 F.3d at 822)). Plaintiff has not identified any factual or legal basis under which Defendant could be liable for conduct predating December 27, 2013.

4. Leave to Amend

Should the Court find her allegations are insufficient to support equitable tolling, Plaintiff asks for leave to amend once more to add an allegation that according to her doctor, she was not able to file an initial claim when she was hospitalized or on leave through January 2014. Opp'n at 3. The Court declines to do so.

First, such a conclusory allegation would not cure the deficiencies in the TAC. The TAC still alleges Plaintiff worked during this period by responding to Spohr's requests, and possibly by taking care of her mother. Such an allegation would not establish Plaintiff was unable to contact an EEO counselor after January 14, 2014. Second, such an allegation, without more, would be purely conclusory and would not meet Rule 8 pleading requirements. Third, when it previously dismissed Plaintiff's claims to the extent they are based on conduct predating December 27, 2013, the Court explicitly and repeatedly advised Plaintiff the TAC would be her third and final chance to amend. Order Dismissing SAC at 8 ("The Court will grant Plaintiff one more chance to amend her claims to show equitable tolling applies based on the standards enunciated in *Stoll*."); *id.* at 13 ("Plaintiff is advised that this will be her last opportunity to cure any deficiencies in her Complaint."). The Court accordingly grants Defendant's motion to dismiss the TAC to the extent it is based on any acts before December 27, 2013 without leave to amend.

**D. Rehabilitation Act**

1. Plaintiff's Opposition

Plaintiff's Opposition to the remainder of Defendant's arguments consists of three paragraphs that fit on one page. *See* Opp'n at 4. Plaintiff cites no case law and does not address the authorities cited by Defendant or in the Court's previous Orders. Plaintiff does not even respond to Defendant's arguments, but simply states she "disagrees with the examples cited in [D]efendant's" Motion. *Id.* Instead, Plaintiff complains that she cannot provide the level of detail the Court required in its Order Dismissing the SAC because "Defendant is in possession of the

14

documents plaintiff would need to state everything with precision, and plaintiff has not yet been permitted to do any discovery and has no other way of accessing these materials." *Id.* Plaintiff requests, again without citing any authority to support her position, she be given the opportunity to conduct discovery on the issue "prior to any dismissal of claims for lack of specificity." *Id.* Plaintiff is not entitled to such discovery. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." (citing *Iqbal*, 556 U.S. at 678-79)).

Despite Plaintiff's failure to substantively address Defendant's Motion, the Court will evaluate whether the allegations of the TAC state a claim.

### 2. Failure to Accommodate

The Court previously dismissed this claim because Plaintiff had failed to allege "when she made the requests [for accommodation], to whom she made those requests, or why these requests were necessary." Order Dismissing SAC at 11 (quoting Order Dismissing FAC at 11 (citing cases)). Defendant argues the TAC continues to insufficiently allege these details. Mot. at 13-16. The Court agrees.

As the Court already found Plaintiff had failed to exhaust her administrative remedies with respect to any discriminatory conduct occurring before December 27, 2013, Spohr's November 8, 2013 refusal to accommodate Plaintiff's request for time off (TAC ¶¶ 24-25) cannot form a basis for her claims. Similarly, Plaintiff's allegations that Spohr ignored Plaintiff's doctors' communications about what "avoiding working directly under fluorescent light" meant starting in November 2013 and refused to let her sit in the cubicle she had used before Spohr became her supervisor, are also time barred. TAC ¶¶ 20-21; *see also* Order Dismissing SAC at 12 (finding same allegations in SAC occurred at the latest on November 8, 2013). Plaintiff does not allege she submitted new requests for this accommodation after her initial November 2013 request. The TAC thus alleges Spohr engaged in "discrete acts" when she originally rescinded Plaintiff's long-standing accommodations and refused her request for time off in November 2013. As discussed above, the fact Plaintiff continued to be affected by these discrete acts thereafter does not constitute a continuing violation. *See supra* at 13-14.

15

The remaining allegations relating to her failure to accommodate claim that do not obviously predate December 27, 2013 are as follows:

(1) On January 8, 2014, Spohr began prohibiting Plaintiff from entering the building based on Spohr's interpretation of Plaintiff's November 8, 2013 doctor's note (TAC ¶ 26);

(2) When Plaintiff's doctor released her to return to work without restrictions on January 15, 2014, Spohr refused to allow her to return to work; "the Army" did not allow Plaintiff to return to work until March 12, 2014 (TAC ¶ 27);

(3) "The U.S. Army also failed to accommodate plaintiff in other ways, including not allowing time to attend doctors' appointments, and refusing to make allowances for plaintiff at times being late or missing work, even when caused by her disability" (TAC ¶ 28); and

(4) Spohr gave Plaintiff a poor performance review for the period ending on January 31, 2014 that was based on the Army's failure to accommodate Plaintiff's failure to follow call-in procedures, as well as late arrivals and unscheduled days that were caused by Plaintiff's disability or her need to take FMLA time to take care of her mother (TAC ¶¶ 28, 34).

These allegations do not state a claim. First, "reasonable accommodation" under the Rehabilitation Act can include a wide variety of options, including job restructuring, modified schedules, reassignments to other positions, acquiring assistive equipment, modifying examination requirements, providing qualified interpreters, etc. *See* 29 U.S.C. § 794(a). Requesting a schedule that would allow time to attend doctors' appointments, or requesting to be excused from complying with policies and procedures regarding calling-in for lateness or absences could constitute requests for reasonable accommodation. But Plaintiff does not allege she requested such accommodations at any point. Second, Plaintiff does not allege how Spohr's refusal to allow Plaintiff into the building and return to work "without any further restrictions – i.e. she could return to working in the exact same manner as she worked prior to November 8, 2013" (TAC ¶ 27) constitutes a failure to accommodate. Third, the Court has twice found that the exact allegation Plaintiff now includes at Paragraph 28 of the TAC[10] was insufficient to state a claim. *See* Order

---

[10] "The U.S. Army also failed to accommodate plaintiff in other ways, including not allowing time to attend doctors' appointments, and refusing to make allowances for plaintiff at times being late

16

Dismissing FAC at 12 (allegations "continue[d] to suffer from the same deficiencies the Court identified in dismissing the FAC in that they fail to identify when and to whom the requests were made."). Plaintiff has not in any way attempted to address the Court's findings in its two previous orders regarding this paragraph; for example, she still fails to allege the identity of the person(s) who failed to provide such accommodations. Fourth, the allegation concerning Plaintiff's negative performance evaluation suffers from similar deficiencies in that it fails to identify what accommodations Plaintiff requested, when, and to whom. To the extent she alleges the performance evaluation itself constitutes a failure to accommodate, Plaintiff also does not allege what accommodation she requested from whom.

Plaintiff argues she could not "estimate dates" or "state everything with precision" without discovery. Opp'n at 4. Plaintiff need not "state everything with precision"; she must only identify the accommodations she requested, when, and to whom she directed those requests. Such facts give rise to a plausible allegation that Plaintiff requested accommodation, consisting with Rule 8(a). Plaintiff offers no explanation why she cannot identify the accommodation she requested, or to whom she made such requests. With respect to "when" Plaintiff requested accommodations, she could have pleaded her allegations on information and belief, consistent with Rule 11, or provided general time frames, but she did not.[11]

For the reasons stated in the Order Dismissing FAC and Order Dismissing SAC, the TAC does not state a claim for failure to accommodate. The Court previously advised Plaintiff she would not be granted a further opportunity to amend her complaint. *See* Order Dismissing SAC at 13. The Court dismisses Plaintiff's claim for Failure to Accommodate with prejudice.

2. Disparate Treatment

The Court previously found some of Plaintiff's allegations were sufficient to state a claim for disparate treatment:

> While Plaintiff could provide more specificity, the Court finds some of these allegations are sufficient to state that Spohr's conduct was

---

or missing work, even when caused by her disability."
[11] The Court observes Plaintiff was able to recall numerous dates in her EEO Complaint. *See* Dkt. no. 19-1 at ECF pp. 21-24.

> motivated by discrimination. At the very least, the allegations that Spohr disciplined Plaintiff for missing work while knowing Plaintiff's doctor had medically excused her from work because of her disability, and gave Plaintiff negative performance evaluations in part because Plaintiff took time off due to her disability, are sufficient to state a claim for disparate treatment.

Order Dismissing SAC at 10. Plaintiff includes the same allegations in the TAC (*see* TAC ¶¶ 28, 34), and the Court continues to find these are sufficient to state a disparate treatment claim and do not obviously predate December 27, 2013. Plaintiff also alleges Spohr refused her entry into the building starting on January 8, 2014, and refused to allow her to return to work starting on January 15, 2014, based on Plaintiff's disability and Spohr's (spurious) interpretation of Plaintiff's doctor's note. TAC ¶¶ 26, 27, 34. The Court thus denies Defendant's Motion to Dismiss Plaintiff's disparate treatment claim. Defendant can attack the validity of particular allegations of the TAC based on failure to exhaust, or on any other grounds, through summary judgment.

## CONCLUSION

To summarize, the Court ORDERS the following:

(1) Plaintiff's claims are DISMISSED to the extent they are based on conduct predating December 27, 2013 WITHOUT LEAVE TO AMEND. Plaintiff has not demonstrated any ground to apply equitable tolling, delayed accrual, or continuing violation. She therefore has failed to exhaust any claims based on conduct predating December 27, 2013, and such claims cannot give rise to liability under the Rehabilitation Act.

(2) Plaintiff's failure to accommodate claim is DISMISSED WITHOUT LEAVE TO AMEND. Plaintiff has failed to allege facts sufficient to show what requests for accommodation she made, to whom, and when.

(3) Paragraphs 11-13 of the TAC are stricken; Plaintiff's FMLA claim has been dismissed.

(4) Defendant's Motion to Dismiss Plaintiff's disparate treatment claim is DENIED.

//
//
//
//
//

The parties are ordered to attend an initial case management conference on May 11, 2017 at 10:00 a.m. in Courtroom B, 450 Golden Gate Avenue, San Francisco, California.

**IT IS SO ORDERED.**

Dated: March 30, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge